IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VISIONQUEST NATIONAL, LTD | ) | |
| *Plaintiff,* | ) | CIVIL ACTION |
| v. | ) | No. 19-2280-PD |
| | ) | |
| CITY OF PHILADELPHIA, | ) | Oral Argument Requested |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Dated: August 6, 2019

HYLAND LEVIN SHAPIRO LLP

*/s/ Peter J. Boyer*
Peter J. Boyer, Esq. (Id. 25517)
Julie M. Murphy, Esq. (Id. 206265)
Daniella Gordon, Esq. (Id. 201477)
Hyland Levin Shapiro LLP
6000 Sagemore Dr., Suite 6301
Marlton, NJ 08053
(856) 355-2900
boyer@hylandlevin.com
murphy@hylandlevin.com
gordon@hylandlevin.com
*Attorneys for Plaintiff, VisionQuest National, Ltd.*

McCALLION & ASSOCIATES LLP

*/s/Kenneth F. McCallion*
By: Kenneth F. McCallion, Esq.
100 Park Avenue – 16th floor
New York, New York 10017
(646) 366-0884

*Admitted Pro Hac Vice*
*Attorneys for Plaintiff, VisionQuest National, Ltd.*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

FACTS AND PROCEDURAL HISTORY ..............................................1

ARGUMENT ........................................................................................2

I.    Standard of Review ..................................................................2

II.   The Controversy Is Ripe for Decision ...................................3

III.  Plaintiff Has Standing to Pursue a Claim Under 48 U.S.C. §1983 for Violation of its Substantive Due Process Rights ................................6

      A.   Plaintiff Asserts a Substantive Due Process Claim on Its Own Behalf ..................................................................7

      B.   Plaintiff has Standing to Assert a Claim as a "Class of One" Under the Equal Protection Clause of the Constitution............11

IV.  The Court Should Deny Defendant's Motion to Dismiss Plaintiff's Claims Under the Fair Housing Act ...................................12

      1.   The Court Should Not Dismiss Plaintiff's FHA Claim Based Upon Defendant's Improper, Fact-Sensitive Argument that the Proposed Facility is Not a "Dwelling" Under the FHA. ........................................................13

      2.   Plaintiff Has Met the Pleading Standards to Assert a Claim for "Disparate Treatment" Under the FHA, Where Plaintiff has Alleged that it was Prevented from Providing Residential Housing Services Based Upon the National Origin or Familial Status of its Proposed Residents. ................................................................18

      3.   Plaintiff Has Met the Pleading Standards to Assert a Claim for "Disparate Impact" Under the FHA, where Plaintiff has Alleged that it was Prevented from Providing Residential Housing Services Based upon the National Origin or Familial Status of its Proposed Residents, and Where the City has Express Policies in Place Regarding Federal Immigration Enforcement Efforts........................................................................18

V.     The Court Should Retain Jurisdiction Over This Dispute, Which
       Impacts Plaintiff's Federal Rights and Implicates Important Issues of
       Federal Policy ...................................................................................21

       1.     No Extraordinary Circumstances Exist to Justify
              Abstention Under Younger ......................................................21

       2.     The Complaint Raises No Unsettled Question of State
              Law, Therefore the Pullman Abstention Doctrine Does
              Not Dictate Abstention in this Case .........................................26

CONCLUSION ........................................................................................30

# Table of Authorities

## Cases

Acierno v. Cloutier, 40 F.3d 597, 616 (3d Cir. 1994) ................................................7

Acierno v. Mitchell, 6 F. 3d 970 (3d Cir. 1993) ........................................................4

ACRA Turf Club, LLC v Zanzuccki, 748 F.3d 127, (3d Cir. 2014).......... 21, 22, 23

ACS Enters. V. Comcast Cablevision, L.P., 1994 U.S. Dist. LEXIS 6256 (E.D. Pa.
   May 12, 1994)......................................................................................................29

Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995) .......................................8

Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399 (3d Cir. 2005)
   ............................................................................................................................25

Assocs. in Obstetrics & Gynecology v. Upper Merion Twp., 270 F. Supp. 2d 633,
   (E. D. Pa. 2003) .................................................................................................8, 9

Baker v. McCollan, 443 U.S. 137 (1979) .................................................................7

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ....................................................2

Berry v. John Doe Managers, 1991 U.S. Dist. LEXIS 10159 ................................13

Cherry Hill Towers LLC v. Township of Cherry Hill, 407 F. Supp. 2d 648 (D.N.J.
   2006) ....................................................................................................................8

Chez Sez III Corp. v. Union, 945 F.2d 628 (3d Cir. 1991) ....................................28

CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612 (3d Cir. 2013) ..................4

Cmty. House, Inc. v. City of Boise, 490 F.3d 1041 (9th Cir. 2007).......................15

Connecticut Hosp. v. City of New London, 129 F. Supp. 2d 123 (D. Conn. 2001)15

Cornell Cos. v. Borough of New Morgan, 512 F. Supp. 2d 238 (E.D. Pa. 2007)...10

DeBlasio v. Zoning Board of Adjustment, 53 F.3d 592 (3d Cir. 1995) ....................7

Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp., 273 F. Supp. 2d 643 (W.D.Pa. 2003) ...........................................................................................................13

Ecotone Farm LLC v. Ward, 639 Fed. Appx. 118 (3d Cir. 2016)...........................9

Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003)........................................9

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) .....................................11

Garcia v. Condarco, 114 F. Supp. 2d 1158 (D.N.M. 2000)............................. 15, 16

Godfrey v. Upland Borough, 246 F.Supp. 3d 1078 (E.D.Pa. 2017).......................26

Gynedd Props., Inc. v. Lower Gwynedd Twp., 970 F.2d 1195 (1992) ...................25

Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982).........................................13

Heck v Humphrey, 512 U.S. 477 (1994) .................................................................3

In ReMed Recovery Care Ctrs. v. Township of Willistown, 36 F. Supp. 2d 676 (E.D. Pa. 1999) ..............................................................................................13

Johnson v. Dixon, 786 F. Supp. 1 (D.D.C. 1991)...................................................15

Kessler Inst. For Rehabilitation v. Mayor of Essex Fells, 876 F. Supp. 641 (D.N.J. 1995) ............................................................................................................29

Knick v. Township of Scott Pennsylvania, 588 U. S. ___ (2019)............ 3, 4, 25, 26

Kobrick v. Stevens, 2017 U.S. Dist. LEXIS 141694................................................8

Lakeside Resorts Enters., LP v. Bd. of Supervisors, 455 F.3d 154 (3d Cir. 2006) ...................................................................................................... .14, 17

MARJAC, LLC v. Trenk, 380 Fed. Appx. 142 (3d Cir. 2010) ................................9

Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995) ....................................7

Matheny Sch. & Hosp. v. Borough of Peapack & Gladstone, 2014 U.S. Dist. LEXIS 117786 (D.N.J. August 25, 2014) ............................................................22

Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667 (3d Cir. 1991).....4, 7

Miller v. City of Philadelphia, 174 F.3d 368 (3d Cir. 1999) ....................................8

New Jersey-Philadelphia Presbytery of Bible Presbyterian Church v. New Jersey State Bd. of Higher Education, 654 F.2d 868 (3d Cir. 1981) ........................ 26, 29

Patel v. City of Belleville, Ill., 720 F. Supp. 720 (S.D. Ala. 1979) ........................15

Peters v. City of Wilkes-Barre, 2016 U.S. Dist. LEXIS 9540 (M.D. Pa. Jan. 27, 2016) .....................................................................................................................23

Pierce v. Allegheny County Bd. Of Elections, 324 F. Supp. 2d 684 (W.D. Pa. 2003) .....................................................................................................................27

Planned Parenthood v. Farmer, 220 F.3d 127, 149-50 (3d Cir. 2000) ...................27

Railroad Commission of Texas v. Pullman Co., 61 S.Ct. 643 (1941).....................26

Rittenhouse Entm't, Inc. v. City of Wilkes-Barre, 861 F. Supp. 2d 470 (M.D. Pa. 2012) ........................................................................................................................9

Sameric Corp., Delaware v. City, Philadelphia, 142 F.3d 582 (3d Cir. 1998). 4, 5, 7

Schneider v. County of Will, 190 F. Supp. 2d 1082 (N.D. Ill. 2002).....................15

Schoenstein v. Constable, 2014 U.S. Dist. LEXIS 165508  (D.N.J. Nov. 26, 2014) ...........................................................................................................................25

Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008) ....................14

Selig v. N. Whitehall Twp. Zoning Hearing Bd., 2018 U.S. Dist. LEXIS 69119 (E.D. Pa. April 24, 2018)....................................................................................24

Solt v. Alpo Petfoods, 837 F. Supp. 681 (E.D. Pa. 1993) ......................................10

Southwest Key Programs, Inc. v. City of Escondido, 2017 U.S. Dist. LEXIS 42618 (S.D.Cal. Mar. 24, 2017) ........................................................................ 16, 17, 18

Sprint Communications, Inc. v. Elizabeth S. Jacobs, et al., 134 S.Ct. 584 (2013) ..... ................................................................................................. 21, 22, 24

Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285 (3d Cir. 1993)............4

Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507, (2015).........................................................................................19

The City of Philadelphia v. Jefferson Beauregard Sessions III, Attorney General of the United States, ED. Pa. Docket No. 17-3894................................................20

Thorpe v. Upper Makefield Twp., 758 Fed. Appx. 258 (3d Cir. 2018) ..............9, 10

Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205 (1972)..............................13

Tulp v. Educ. Comm'n for Foreign Med. Graduates, 376 F. Supp. 3d 531 (E.D. Pa. 2019) ................................................................................................3

United Artists Theater Circuit, Inc. v. Twp of Warrington, 316 F.3d 392 (3d Cir. 2003) ................................................................................................8

United States v. Columbus Country Club, 915 F.2d 877 (3d Cir. 1990) ...............14

Village of Willowbrook v. Olech, 528 U.S. 562 (2000).................................. 11, 12

Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989)......................................19

West v. Atkins, 487 U.S. 42, 48 (1988)...................................................................7

Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985) ................................................................................3, 4

Younger v. Harris, 401 U.S. 37 (1971)................................................ 21, 22, 23, 24

## Statutes

42 U.S.C. § 3602 .................................................................................................13

42 U.S.C. § 3604(a) ...........................................................................................13

42 U.S.C. §1983 ..................................................................................................3

Plaintiff, VisionQuest National, Ltd. ("Plaintiff" or "VisionQuest") submits this Memorandum of Law in opposition to the Motion of Defendant, the City of Philadelphia ("Defendant" or "City"), to Dismiss the Amended Complaint filed in this matter (the "Motion").

## INTRODUCTION

This case concerns civil rights violations that arise out of the City's decision to uphold a use permit violation that was issued on the basis of the national origin and familial status of the proposed residents of VisionQuest's facility.  The City's conduct violates VisionQuest's substantive due process rights and the Fair Housing Act, and deprives VisionQuest of the use of its property and benefit of its contracts.

## FACTS AND PROCEDURAL HISTORY

VisionQuest provides shelter and support facilities for children.  Compl. at ¶1.  Beginning in 2010, VisionQuest operated a "Group Living" facility in Philadelphia for residents between the ages of 13 and 18.  Id. ¶¶ 7-8.  VisionQuest operated this Facility pursuant to a permit issued by the Zoning Board of Adjustment (the "Zoning Board") and Department of Licenses and Inspections ("L&I").  Id. ¶ 8, 14, 45.

In 2018, VisionQuest entered into an agreement with the U.S. Dept. of Health and Human Services' Office of Refugee Resettlement ("ORR") to provide shelter and support services to 60 unaccompanied and undocumented minors (the "UAC").  Compl. ¶ 16.  When the City learned that VisionQuest proposed to provide services to the UAC, rather than to United States citizens as it had for the past 7 years, VisionQuest received a Notice of Violation from the L&I.  Id. ¶¶ 32, 33, Ex. K.  VisionQuest appealed the Notice of Violation to the Zoning Board.  Id. ¶ 34.  After a public hearing, during which the Zoning Board considered comments regarding the national origin of the proposed residents, the Zoning Board denied the appeal.  Id. ¶¶35-42.  That decision is currently on appeal to the Philadelphia Court of Common Pleas.

On or about May 28, 2019, VisionQuest instituted the above-captioned case to redress civil rights violations.  On July 2, 2019, VisionQuest filed a First Amended Complaint.  The City filed a Motion to Dismiss on July 23, 2019.

## ARGUMENT

### I.   <u>Standard of Review</u>

"Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]"   <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal

quotations omitted). In analyzing a motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Tulp v. Educ. Comm'n for Foreign Med. Graduates, 376 F. Supp. 3d 531, 538 (E.D. Pa. 2019) (internal quotations omitted.).

## II.    The Controversy Is Ripe for Decision

The recent United States Supreme Court decision in Knick v. Township of Scott Pennsylvania, 588 U. S. ___ (2019), dispels the notion that a grievant, in the context of a federal taking under the Fifth Amendment, must exhaust state remedies prior to initiating a federal suit under 42 U.S.C. §1983.  That analysis extends to the substantive due process issues raised in this matter.

In Knick, the Court reviewed prior jurisprudence regarding procedural prerequisites to federal takings claims under the Fifth Amendment.  588 U.S. ___. The Court overruled Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985), which had held "that a property owner whose property has been taken by a local government has not suffered a violation of his Fifth Amendment rights – and thus cannot bring a federal takings claim in federal court – until a state court has denied his claim for just compensation under state law."  Id. at *1.  In reversing Williamson, the Court in Knick reiterated its holding in Heck v Humphrey, 512 U.S. 477, 480 (1994): "The

Civil Rights Act of 1871, after all, guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials," and the settled rule is that 'exhaustion of state remedies 'is not a prerequisite to an action under [42 U.S.C.] §1983.'" <u>Knick</u>, 588 U.S. *2[1].

Moreover, even if <u>Knick</u> had not overruled this requirement, the administrative exhaustion requirement poses no barrier to the instant action.  In <u>Taylor</u>, 983 F.2d at 1289, and <u>Sameric</u>, 142 F.3d at 970, there was never a final denial of the permit application.  <u>See</u> <u>also</u> <u>CMR D.N. Corp. v. City of Philadelphia</u>, 703 F.3d 612 (3d Cir. 2013) (plaintiff claim unripe because plaintiff never applied for a building permit); <u>Acierno v. Mitchell</u>, 6 F. 3d 970 (3d Cir. 1993) (also called into question by <u>Knick</u>, but holding matter not ripe for adjudication because plaintiff did not appeal denial of building permit); <u>Midnight Sessions, Ltd. v. City of Philadelphia</u>, 945 F.2d 667 (3d Cir. 1991) (matter not ripe for adjudication because plaintiff did not appeal citations).

These facts are entirely distinct from the matter at hand.  In each of the cases cited by Defendant, the grievant failed to obtain a final determination from the

---

[1]  Prior to <u>Knick</u>, the Third Circuit had held that in cases involving land-use decisions, a property owner does not have a ripe, constitutional claim until the zoning authorities have had "an opportunity to 'arrive[ ] at a final, definitive position regarding how [they] will apply the regulations at issue to the particular land in question.'"  <u>Sameric Corp., Delaware v. City, Philadelphia</u>, 142 F.3d 582, 597 (3d Cir. 1998) (citing <u>Taylor Inv., Ltd. v. Upper Darby Township</u>, 983 F.2d 1285, 1291 (3d Cir. 1993) (citing <u>Williamson</u>, 473 U.S. 172)).

relevant zoning authority.  In none of those cases, however, was the plaintiff required to undergo an entirely *new* permitting process prior to seeking redress for a wrongful, final zoning determination on an *existing* use permit.  Nor were the plaintiffs required to exhaust state judicial appeals subsequent to the zoning board's determination.

Here, Defendant notes that Court of Common Pleas has not "decided the veracity" of the Zoning Board of Adjustment's decision.  Def. Brief at 11. Defendant thereby seems to be suggesting that Plaintiff must exhaust all state court appeals, far beyond the Zoning Board's decision, in order to be deemed to have exhausted administrative remedies.  The City cites no authority to support the bold assertion that litigation in the Court of Common Pleas is part of the administrative exhaustion process.  In fact, the Third Circuit has held to the contrary in Sameric Corp., Delaware v. City, Philadelphia, 142 F.3d 582 (3d Cir. 1998) (zoning board of adjustment's decision is final determination).   Nor is there any authority for the proposition that a new use permit must be sought prior to seeking federal adjudication of the constitutional merits of a denial under an existing permit.[2]

The administrative history of this action, for purposes of determining ripeness for suit in federal court, is straightforward and undisputed.  The City

---

[2]   The substantive due process claim raised in this Court is *not* before the state court. Plaintiff's appeal of the Zoning Board of Adjustment's decision is limited to the propriety of the Zoning Board of Adjustment's decision as a matter of state law.

issued a Notice of Violation in connection with Plaintiff's intended use of its facility to provide housing to the UAC pursuant to a contract with the federal government, and Plaintiff appealed to the Zoning Board, which denied the appeal. The Zoning Board's denial resulted in a final administrative determination. The Court should reject Defendant's claim that Plaintiff cannot seek legal redress for the City's wrongful use determination, which pertains to an *existing* use permit, until Plaintiff initiates and concludes an entirely *new* use permit process.

### III.    Plaintiff Has Standing to Pursue a Claim Under 48 U.S.C. §1983 for Violation of its Substantive Due Process Rights

Defendant argues that Plaintiff, through its substantive due process claim, seeks to vindicate rights of its potential adolescent residents, as opposed to its own rights. Defendant misstates Plaintiff's claim. The Complaint refers to Defendant's unconstitutional deprivation of Plaintiff's property rights for the purpose of discriminating against a protected class of individuals of foreign nationality; however, that discriminatory conduct is not cited for the purpose of seeking legal redress for the protected class of individuals themselves.[3]    Rather, Defendant's discriminatory decision is cited because it had the effect of denying *Plaintiff* the continued right to operate within the confines of its existing use permit, and

---

[3] The effect of a ruling in Plaintiff's favor may inure to the benefit of the protected class; however, that consequence is irrelevant for purposes of assessing the claim before the Court; namely, Plaintiff's substantive due process rights to a specific land use interest.

depriving *Plaintiff* of a substantive due process right in its own land interest. Defendant's wrongful decision caused Plaintiff concrete and particularized injury, and forms a sufficient basis for the substantive due process violation claim.

### A. Plaintiff Asserts a Substantive Due Process Claim on Its Own Behalf

A plaintiff may seek redress for a violation of constitutional rights pursuant to 42 U.S.C. §1983.  Baker v. McCollan, 443 U.S. 137, 144 (1979).  The initial inquiry in a §1983 suit is "(1) whether the conduct complained of was committed by a person acting under color of state law and (2) whether the conduct deprived the complainant of rights secured under the Constitution or federal law."  Sameric, 142 F.3d at 590 (citing West v. Atkins, 487 U.S. 42, 48 (1988); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  When complaining of violations of substantive due process rights, "a plaintiff must prove that the governmental authority acted to 'infringe a property interest encompassed by the Fourteenth Amendment.'"  Acierno v. Cloutier, 40 F.3d 597, 616 (3d Cir. 1994) (citing Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir. 1991)). Ownership of property is a recognized property interest under the Fourteenth Amendment.  DeBlasio v. Zoning Board of Adjustment, 53 F.3d 592, 601 (3d Cir. 1995).  ("Indeed, one would be hard-pressed to find a property interest more worthy of substantive due process protection than ownership.").

To prevail in a substantive due process claim arising from a municipal land use decision, a plaintiff must establish that it has a property interest that is protected by the Fourteenth Amendment, and that the government's decision in imposing on that interest shocks the conscience.  Cherry Hill Towers LLC v. Township of Cherry Hill, 407 F. Supp. 2d 648, 654 (D.N.J. 2006) (citing United Artists Theater Circuit, Inc. v. Twp of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003).  When the basis for the deprivation is discrimination against a protected class, strict scrutiny must be applied in reviewing the basis of the governmental action.  Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227 (1995).

Whether governmental action in violation of constitutional rights shocks the conscience is necessarily a fact intensive inquiry.  See Assocs. in Obstetrics & Gynecology v. Upper Merion Twp., 270 F. Supp. 2d 633, 654 (E. D. Pa. 2003); see also Kobrick v. Stevens, 2017 U.S. Dist. LEXIS 141694, at *14 (M.D. Pa. Sept. 1, 2017).  "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999).  When "a state actor has time to deliberate prior to committing the offending behavior, the standard for conscience-shocking behavior is lower than it would be in 'hyperpressurized situations' that afford no time to consider the action." Assocs. in Obstetrics &

Gynecology, 270 F. Supp. at 654 (quoting Estate of Smith v. Marasco, 318 F.3d 497, 509 (3d Cir. 2003)).

Race-based discriminatory enforcement of zoning ordinances is a classic example of conscience shocking behavior.  Thorpe v. Upper Makefield Twp., 758 Fed. Appx. 258, at 262 (3d Cir. 2018); Rittenhouse Entm't, Inc. v. City of Wilkes-Barre, 861 F. Supp. 2d 470, 487 (M.D. Pa. 2012) (allegation of intentionally injurious conduct motivated by racial bias would shock the conscience); Ecotone Farm LLC v. Ward, 639 Fed. Appx. 118 at 125 (3d Cir. 2016) (decisions motivated by bias against an ethnic group shock the conscience); MARJAC, LLC v. Trenk, 380 Fed. Appx. 142, 147 (3d Cir. 2010) (overturning summary judgment where complaint alleged selective enforcement of ordinance motivated by ethnic bias).

In this matter, Plaintiff's substantive due process property interest in its existing use permit is not disputed.  Plaintiff operated a youth housing facility for years without issue under a permit duly issued by the City.  It was only when Plaintiff announced its intention to house the UAC – who are all, by definition, of foreign nationality, as opposed to the prior juvenile residents of the facility, who were already present in the United States – that the City determined to issue a notice of violation to Plaintiff.  At a hearing before the Zoning Board, public comment was made regarding the nationality and origin of the potential residents of the Plaintiff's facility, questioning, for instance, why the UAC would be

afforded accommodation when local children's various needs had not been satisfied to the community members' standards.   The hearing board members openly indicated that they would take the community members' comments into consideration.

Plaintiff has alleged racial and ethnic motivations for the decision of the Zoning Board, an allegation that is supported by the facts alleged in the complaint. Under Thorpe, these motivations "certainly shock the conscience."  The Zoning Board had time to deliberate prior to committing the offending behavior   The influx of migrant families entering the county is an issue that has gained national attention.   See Compl. at ¶ 26.   VisionQuest's facility would help address a recognized emergency situation, and provide safe housing for an extremely vulnerable subset of migrants, but for the City's improper actions.

Defendant argues improper alternate facts in its Motion in an effort to suggest that Plaintiff's interpretations of the statements and actions of the Zoning Board are incorrect.   This is inappropriate in a Motion to Dismiss, where allegations of motive and intent in discrimination are inherently fact-sensitive.   See Solt v. Alpo Petfoods, 837 F. Supp. 681, 683-84 (E.D. Pa. 1993).   Plaintiff should be permitted to take discovery regarding the discriminatory intent of the Zoning Board.   See Cornell Cos. v. Borough of New Morgan, 512 F. Supp. 2d 238, 269 (E.D. Pa. 2007) ("[t]he need for discovery before testing a complaint for factual

sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages.  Plaintiffs may be unaware of the identities and roles of relevant actors and . . . unable to conduct a pre-trial investigation to fill in the gaps.").

Plaintiff is not required to prove its claim in its Complaint, and the factual determinations the City calls upon the Court to make at this juncture are both premature and inappropriate, given the current state of the record.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 213 (3d Cir. 2009) (internal citation omitted) ("Even post-Twombly, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.").   Accordingly, the Complaint is more than sufficient to survive Defendant's Motion to Dismiss under 12(b)(6).

### B. Plaintiff has Standing to Assert a Claim as a "Class of One" Under the Equal Protection Clause of the Constitution

The Equal Protection Clause provides that a state government shall not "deny to any person within its jurisdiction the equal protection of the laws."  In <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000), the Supreme Court held that the Equal Protection Clause protects individuals, as well as vulnerable groups and fundamental rights from vindictive state action.  <u>Id.</u> at 564.

Plaintiff has asserted an equal protection claim as a "class of one".  Id..  Such claims require that "the individual plaintiff alleges intentional and disparate treatment compared to others similarly situated and that there is no rational basis for the difference in treatment."  Id. at 564.  An individual plaintiff can challenge such treatment on the basis that it is "is irrational and wholly arbitrary."  Id. at 565.

Plaintiff has alleged facts that demonstrate that Defendant's treatment of it differed from similarly situated entities.   Indeed, Defendant's treatment of Plaintiff's property interest was much different when Plaintiff offered services to non-refugee youth residents, as opposed to the UAC.   Thus, the Amended Complaint contains sufficient factual allegations to state a claim for an Equal Protection, class-of-one violation.

### IV.   The Court Should Deny Defendant's Motion to Dismiss Plaintiff's Claims Under the Fair Housing Act

Defendant argues that Plaintiff's claim under the Fair Housing Act, 42 U.S.C. § 3604 (a) ("FHA") must be dismissed because 1) "a custodial facility for Unaccompanied Children" is not a "dwelling" covered by the FHA, 2) Plaintiff does not sufficiently articulate facts in support of disparate treatment, and 3) Plaintiff does not identify any policy that disparately impacts a protected group. Defendant's arguments are without merit.

**1. The Court Should Not Dismiss Plaintiff's FHA Claim Based Upon Defendant's Improper, Fact-Sensitive Argument that the Proposed Facility is Not a "Dwelling" Under the FHA.**

The FHA provides that "it shall be unlawful . . . to . . . make unavailable or deny, a dwelling to any person because of race, color, religion, . . . or national origin." 42 U.S.C. § 3604(a). Under the FHA, "'dwelling' means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families . . . ." 42 U.S.C. § 3602(b). An "aggrieved person" under the FHA is "any person who…claims to have been injured by a discriminatory housing practice." 42 U.S.C. 3602(i). "[C]omplaints by private persons are the primary method of obtaining compliance with the [Fair Housing Act]," and are to be construed "in terms broad." Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 208-209 (1972).[4]

---

[4] Defendant does not appear to dispute the fact that Plaintiff has standing to assert a claim under the FHA. Indeed, Plaintiff's standing under the FHA is clearly established by extensive precedent. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982) (nonprofit fair housing organization had standing to argue that apartment complex owner's racial steering practices frustrated organization's counseling and referral services and posed concrete injury, far more than simply a setback to organization's "abstract social interests"); Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp., 273 F. Supp. 2d 643 (W.D.Pa. 2003) (company in business of providing housing for handicapped persons that has been prevented from doing so due to alleged discrimination has standing to sue under FHA); In ReMed Recovery Care Ctrs. v. Township of Willistown, 36 F. Supp. 2d 676 (E.D. Pa. 1999) (plaintiff engaged in business of providing treatment and rehabilitation services to handicapped persons denied application for variance had standing as "aggrieved person"); Berry v. John Doe Managers, 1991 U.S. Dist. LEXIS 10159 (E.D.Pa. Jul. 22, 1991) (Fair Housing Council of Delaware had standing to sue under the FHA

The Third Circuit has held that two factors must be considered to determine whether a specific facility is a "dwelling" under the FHA.  First, a court must determine whether the facility is intended or designed for occupants who "intend to remain in the [facility] for any significant period of time."  <u>Lakeside Resorts Enters., LP v. Bd. of Supervisors</u>, 455 F.3d 154, 158 (3d Cir. 2006) (quoting <u>United States v. Columbus Country Club</u>, 915 F.2d 877 (3d Cir. 1990)).  Second, a court must determine whether those occupants would "view [the facility] as a place to return to" during that period.  <u>Id.</u>

In <u>Lakeside Resorts</u>, the Third Circuit held that a drug and alcohol treatment center was a dwelling under the FHA.  With respect to the first prong of the test, the Court found that the average stay at the center was 14.8 days, which was sufficient to constitute a "significant period of time."  <u>Id.</u>  With respect to the second prong, testimony established that the residents "return[ed] to their rooms in the evening", received mail, hung pictures in their rooms, had visitors and generally "made it their 'residence'" while residing there.  Therefore, the second prong was also met.  <u>Id.</u>

Halfway houses and group homes have repeatedly been determined to constitute "dwellings" under the FHA.  <u>Schwarz v. City of Treasure Island</u>, 544 F.3d 1201 (11th Cir. 2008) (six halfway houses were like homes, where residents

because allegations of economic loss and impairment of ability to provide persons with housing referrals were sufficient injury to establish standing).

stayed on average between 6-10 weeks, and residents not required to leave halfway houses after completing treatment); Connecticut Hosp. v. City of New London, 129 F. Supp. 2d 123 (D. Conn. 2001) (nature of the plaintiffs' occupancy resembles that of a resident far more than that of a hotel guest).  Similarly, homes for migrant workers have also been determined to constitute "dwellings" under the FHA.    Homeless shelters have even, in some instances, been considered "dwellings" under the FHA.  See e.g. Cmty. House, Inc. v. City of Boise, 490 F.3d 1041 (9th Cir. 2007) (noting previous application of the FHA to homeless shelters, but declining hold that all temporary shelters will automatically fit within the FHA's definition of 'dwelling,' and that inquiry is fact sensitive); but see Johnson v. Dixon, 786 F. Supp. 1 (D.D.C. 1991), (doubtful that an "emergency overnight shelter" is a "dwelling", but noting FHA anti-discrimination provisions applied to shelters for the homeless for purposes of addressing motion for a preliminary injunction).

In contrast, Courts have found that motels, bed and breakfasts and jails are not dwelling units.  Patel v. City of Belleville, Ill., 720 F. Supp. 720 (S.D. Ala. 1979) (motel not dwelling); Schneider v. County of Will, 190 F. Supp. 2d 1082 (N.D. Ill. 2002) (bed and breakfast not a dwelling); Garcia v. Condarco, 114 F. Supp. 2d 1158 (D.N.M. 2000) (jail not dwelling).  In Garcia, the Court noted that a jail is designed as a detention facility, not a "residence," and further noted that the

primary purpose of a jail is to provide just punishment, adequate deterrence, protection of the public, and correctional treatment.  Id. at 1160-1161.

The lead case that Defendant cites in support of its argument that the Plaintiff's facility is not a "dwelling" is an unpublished case in which the Court _denied_ the defendant's motion for summary judgment in a matter involving a similar set of facts.  In Southwest Key Programs, Inc. v. City of Escondido, 2017 U.S. Dist. LEXIS 42618 (S.D.Cal. Mar. 24, 2017), the plaintiff unsuccessfully applied for a conditional use permit from the city.  The plaintiff sought to convert a former skilled nursing facility located in a residential zone into a custodial facility for unaccompanied alien children ("UAC"), who had been taken into custody at the border and had been transferred to custodial facilities by the ORR while awaiting resolution of their immigration proceedings.[5]

The Court in Southwest noted that a "variety of structures were within the FHA such as drug and alcohol rehabilitation centers, a residential school for emotionally disturbed adolescents, a residential child care facility, a group home for needy and dependent children, and student housing."  Id. at *5.  The Court held that it must "view the facts and draw all reasonable inferences in the light must

---

[5]   Notably, the court's decision in Southwest did not address any purported obligation by the plaintiff to exhaust further appeals at the state level prior to filing its federal civil rights complaint.  There was no suggestion that the plaintiff's civil rights complaint was not ripe for decision before the federal court, or that further state level remedies needed to be exhausted.

favorable to the non-moving party,", and that "faced with two reasonable conclusions from the cases and the facts, there is a triable issue of material fact on whether the facility is a dwelling under the FHA and FEHA." (internal citations and quotations omitted).  The Court elaborated:

> Since the FHA was intended to provide "for fair housing throughout the United States," *42 U.S.C. § 3601*, the Court concludes that further development of the record will be useful to determine whether Plaintiff Southwest Key's proposed facility was custodial or a dwelling. *Schwarz, 544 F.3d 1201* (FHA liberally construed.).  As a result, the Court denies Defendant's motion for summary judgment on the FHA and FEHA claims.

Southwest, 2017 U.S. Dist. LEXIS 42618, at *14-15.

Defendant likens Plaintiff's residential facility to a jail solely because the proposed minor residents would not be able to come and go as they please at all hours of the day and night.  Defendant ignores the fact that there is no "corrective" aspect to the facility whatsoever.  There is no punitive, rehabilitative, or protective purpose in play.  Moreover, the notion of restricted movement, in and of itself, may be common to any number of "dwellings," be they group homes or drug rehabilitation centers, where residents may have limitations on their ability to come and go at whim.  Restrictions on movement would certainly be present at a facility that provides housing to minors.

Simply stated, the fact of some restriction in a facility that provides housing to juvenile residents cannot be the end of the inquiry under Lakeside Resorts; an

inquiry which, under any circumstance, should not be prematurely undertaken at the pleadings or even the summary judgment stage.  See <u>Southwest</u>, 2017 U.S. Dist. LEXIS 42618.  The existence of some restriction on movement, consistent with that which may be present in other approved d

wellings under the FHA, and absent any punitive purpose, does not warrant summary dismissal of Plaintiff's claim under the FHA, a statute that must be interpreted in the broadest possible terms.

**2. Plaintiff Has Met the Pleading Standards to Assert a Claim for "Disparate Treatment" Under the FHA, Where Plaintiff has Alleged that it was Prevented from Providing Residential Housing Services Based Upon the National Origin or Familial <u>Status of its Proposed Residents.</u>**

The facts asserted in support of Plaintiff's claim under the FHA for disparate treatment are more than sufficient under <u>Twombly</u>/<u>Iqbal</u>.  Plaintiff has clearly alleged that the City cited Plaintiff for a use violation as a result of the foreign nationality and/or familial status of the facility's proposed residents.  Plaintiff has alleged that it provided similar housing services to juvenile individuals of domestic origin without citation, and that the factor that distinguishes the prior residents and the proposed unaccompanied minors is a protected class distinction.  This targeted violation constitutes grounds for a disparate treatment claim.

**3. Plaintiff Has Met the Pleading Standards to Assert a Claim for "Disparate Impact" Under the FHA, where Plaintiff has Alleged that it was Prevented from Providing Residential Housing Services Based upon the National Origin or Familial**

**Status of its Proposed Residents, and Where the City has Express Policies in Place Regarding Federal Immigration Enforcement Efforts.**

Plaintiffs are permitted to make claims under the FHA based upon "disparate impact." Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507, 2511 (2015) ("Recognition of disparate-impact liability under the FHA also plays a role in uncovering discriminatory intent:  it permits plaintiffs to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment.").  A disparate-impact claim that "relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity."  Id. at 2523 (citing Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 653 (1989)).

While Plaintiff's claim does not rely merely upon "statistical disparity," Defendant nonetheless argues that Plaintiff's claim should fail under a disparate impact theory because Plaintiff can only cite to one instance of alleged wrongful conduct, and cannot point to any specific policy that arguably factored into the City's decision to violate Plaintiff for its intended use of its facility for unaccompanied minors.  This is incorrect.

The Amended Complaint does not explicitly refer to a City policy regarding undocumented persons within Philadelphia; however, the Court may take judicial notice of various City policies regarding federal immigration enforcement.   See

generally, <u>The City of Philadelphia v. Jefferson Beauregard Sessions III, Attorney General of the United States</u>, ED. Pa. Docket No. 17-3894, Memorandum re: Motion for Preliminary Injunction, Docket Entry No. 74, at *30 (Nov. 15, 2017) (Philadelphia is a "welcoming city"); <u>Id.</u> at *31 (City policy to protect confidentiality of information for undocumented individuals who are "law abiding"); <u>Id.</u> at *30 (prohibition on inquiring into immigration status subject to exceptions, consistent with mission to safeguard population, not to engage in immigration enforcement).[6]

The City has indeed enacted policies by which the City, in a stated effort to maintain a welcoming atmosphere for immigrant communities, has declined to participate in federal immigration efforts perceived by the City to violate that policy.  To be clear, Plaintiff takes no issue with the lawfulness of those policies, in and of themselves, in this matter.  However, the City's actions – citing Plaintiff for attempting to act upon a contract with the federal government to provide residential services to undocumented minors, having never cited Plaintiff for providing nearly identical services to lawful resident children for years without issue – certainly appear on their face to be connected to Defendant's policy not to play host to federal policies related to undocumented immigrants that have not

---

[6]  See full opinion at
https://images.law.com/contrib/content/uploads/documents/402/6861/Baylson-Opinion.pdf.

committed any crimes.  Plaintiff should have the opportunity to take discovery with respect to these policies and their connection to the state action at issue here.

**V.    The Court Should Retain Jurisdiction Over This Dispute, Which Impacts Plaintiff's Federal Rights and Implicates Important Issues of Federal Policy**

VisionQuest brings this matter to redress serious violations of its due process and equal protection rights as well as violations of its rights under the Fair Housing Act.  Moreover, the City's actions exacerbate a humanitarian crisis involving efforts to provide much needed housing to children.  This tribunal is the appropriate forum for redress of these constitutional and federal claims, and this Court should not take the extraordinary step of abstaining from hearing them.

**1. No Extraordinary Circumstances Exist to Justify Abstention Under Younger**

There are no exceptional circumstances that would warrant abstention under the Younger doctrine.  "[F]ederal courts have a 'virtually unflagging' obligation to hear and decide cases within their jurisdiction."  ACRA Turf Club, LLC v Zanzuccki, 748 F.3d 127, 138 (3d Cir. 2014) (quoting Sprint Communications, Inc. v. Elizabeth S. Jacobs, et al., 134 S.Ct. 584, 591 (2013)).  The abstention doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971) affirms a federal district court's discretion to abstain from exercising jurisdiction in limited circumstances, which,

in the civil context, include only proceedings "akin to criminal prosecutions", such as "civil enforcement proceedings.  Sprint, 134 S.Ct. at 587.

The state court proceedings in this matter not quasi-criminal, and therefore fall outside of Younger's ambit.   Courts consider the following factors to determine whether a state proceeding is quasi-criminal:

> (1) [whether] the action as commenced by the State in its sovereign capacity, (2) [whether] the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) [whether] there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges. . . . [and (4)] whether the State could have alternatively sought to enforce a parallel criminal statue.

ACRA Turf Club, LLC, 748 F.3d at 138.

None of these circumstances are present.  See e.g., Matheny Sch. & Hosp. v. Borough of Peapack & Gladstone, 2014 U.S. Dist. LEXIS 117786 (D.N.J. August 25, 2014) (declining to abstain from hearing civil rights claims arising out of denial of approval of site plan in state court action).

In Sprint, the pending state action was initiated by the federal court plaintiff as an appeal of a state administrative agency decision, and the federal complaint sought declaratory relief on a question of preemption.  Sprint, 134 S. Ct. at 588. The Supreme Court held that the appeal pending in the state court was not invoked to sanction the federal plaintiff for wrongful conduct; rather it was invoked to settle a dispute between two parties.  Id. at 592-93.  Here, VisionQuest, not the City,

initiated the state court action as an appeal of a notice of violation.  The pending state court appeal focuses on whether the Plaintiff's use of its facility to house unaccompanied minor children is a new use requiring a variance or whether the use constitutes an existing use under the permit issued to Plaintiff in 2010.

Likewise, in <u>ACRA</u>, the federal plaintiff was served with a notice by the state administrative agency.  <u>ACRA</u>, 748 F.3d at 138-39.  Pursuant to the notice, the federal plaintiff was advised that sanctions and potential revocation of licensure would result from plaintiff's failure to make progress towards licensing its additional facilities.  <u>Id.</u> at 140.  Here, similarly, the notice of violation advised Plaintiff of the possibilities of fines and penalties to accrue if a new variance was not obtained and of the possible revocation or suspension of certain licenses and permits.  <u>See</u> Compl., Ex. I[7].  In <u>ACRA</u>, the Supreme Court found that a similar notice "in no way resembles the initiation procedures employed . . . in cases where the Supreme Court has applied <u>Younger</u>. . . .[N]egative consequences are not the same thing as sanctions."   Here, the Notice of Violation, which warns of potential future negative consequences, is a far cry from the ordinance being enforced in <u>Peters v. City of Wilkes-Barre</u>, 2016 U.S. Dist. LEXIS 9540 (M.D. Pa. Jan. 27, 2016), which, when enforced, immediately strips a rental unit of its certificate of

---

[7]  The notice specifically advises: "Your failure to correct the violations *may also result in the City filing a legal action against you to obtain compliance, an injunction and the imposition of fees and fines*."  <u>Id.</u> (emphasis added).

occupancy.    In this case, the state proceeding is not a "civil enforcement proceeding", nor is it quasi-criminal in nature.  Therefore, <u>Younger</u> does not apply.

Even if the Court concludes that the proceedings here are "quasi-criminal", that does not end the inquiry.  As set forth in <u>Sprint,</u> the following factors supplement the <u>Younger</u> analysis once the threshold of "quasi-criminal" proceeding is met: (1) whether there is an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges.  <u>Sprint</u>, 134 S.Ct. at 593.

In this federal case, Plaintiff does not challenge the zoning ordinance itself, but rather challenges the discriminatory, arbitrary and capricious manner in which the ordinance has been applied to it.  <u>See Selig v. N. Whitehall Twp. Zoning Hearing Bd.</u>, 2018 U.S. Dist. LEXIS 69119 *13-14 (E.D. Pa. April 24, 2018) (challenges regarding application of land use policies usually do not implicate important state interests; whether zoning board's conduct violated plaintiff's due process rights will not implicate state interests in regulating and overseeing land use policies).  Thus, this federal action is not a land-use case; it is a civil rights case and a case to vindicate the Plaintiff's rights under the Fair Housing Act.

Although "land use" proceedings may involve important state interests, a §1983 claim regarding unconstitutional acts is <u>not</u> considered to implicate important state interests.  <u>Addiction Specialists, Inc. v. Township of Hampton</u>, 411

F.3d 399, 410-11 (3d Cir. 2005) (abstention inappropriate because determination of whether land use authority deprived party of substantive due process does not implicate on the zoning policies themselves or the validity of the underlying ordinance); Gynedd Props., Inc. v. Lower Gwynedd Twp., 970 F.2d 1195, 1203 (1992) (declining to abstain under Younger where the claims related to application of land-use ordinances to deprive the plaintiff of federal rights); Schoenstein v. Constable, 2014 U.S. Dist. LEXIS 165508 *21 (D.N.J. Nov. 26, 2014) (declining to abstain where plaintiff alleged that state's enforcement of applicable law was discriminatory, and such federal statutory rights do not implicate state interests).

With respect to the third factor referenced by the Supreme Court in Sprint, the state court proceeding in the case at bar does not provide an adequate opportunity to raise the federal claims asserted herein.  Because this proceeding stems from an appeal of a notice of violation, the Zoning Board did not have jurisdiction to decide questions of infringement of constitutional rights.[8]  Second, Plaintiff is not required to seek redress of its constitutional claims in the state court.

---

[8]  The City has cited to 2 Pa. C.S.§753 for the proposition that Plaintiff is required to litigate its constitutional issue in state court.  In fact, §753 is permissive and allows, but does not require, a litigant to raise the validity of the ordinance in an appeal and precludes raising the issue if not raised to the agency in the first instance.  Here, Plaintiff is not attacking the validity of an ordinance, which formed the basis for the existing use. Moreover, as noted above, any doubts about the requirement of Plaintiff to exhaust remedies before the administrative court before vindicating violations of constitutional rights in a federal court were put to rest by the recent Supreme Court decision in Knick, infra.

See, e.g., Knick v. Twp. of Scott, Pennsylvania, et al., 138 S.Ct. 1262 (2019) (noting the "general rule" that plaintiff may bring claims under §1983 without first bringing a state lawsuit); see also, New Jersey-Philadelphia Presbytery of Bible Presbyterian Church v. New Jersey State Bd. of Higher Education, 654 F.2d 868, 885 (3d Cir. 1981) (plaintiff's choice of forum for vindication of federal rights should be preserved).  Finally, adjudication of Plaintiff's substantive due process claim will not interfere in the state-court action; therefore, abstention is inappropriate here.  Godfrey v. Upland Borough, 246 F.Supp. 3d 1078, 1094 (E.D.Pa. 2017).

This case – a civil rights and fair housing case based on the discriminatory application of a zoning ordinance – falls well outside the boundaries of Younger and this Court should decline to abstain from hearing it.

**2. The Complaint Raises No Unsettled Question of State Law, Therefore the Pullman Abstention Doctrine Does Not Dictate Abstention in this Case**

The circumstances of this case do not include exceptional circumstances that would mandate abstention under the Pullman doctrine.  Like Younger abstention, abstention under Railroad Commission of Texas v. Pullman Co., 61 S.Ct. 643 (1941) should be rarely invoked, and only when the following exceptional circumstances are met: (1) uncertain issues of state law underlying the constitutional claims; (2) state issues are amenable to a state court interpretation

that could obviate the need to adjudicate or substantially narrow the scope of the federal claim; and (3) an erroneous construction of state law by the federal court would disrupt important state policies. <u>Planned Parenthood v. Farmer</u>, 220 F.3d 127, 149-50 (3d Cir. 2000). If all three circumstances are present, the court should then weigh whether an adequate remedy is available under state law, the length of time during which litigation has been pending and the impact of delay on the litigants. <u>Id.</u> at 150; <u>see</u> <u>also</u>, <u>Pierce v. Allegheny County Bd. Of Elections</u>, 324 F. Supp. 2d 684, 703 (W.D. Pa. 2003).

The state court action does not turn on an interpretation of state law. The City argues that the "uncertain" state law at issue is the language in Plaintiff's permit, "under the jurisdiction of a court" and the Zoning Board's interpretation of the language. The City's argument, however, is a red herring – the permit at issue is not ambiguous and a state court cannot plausibly find that it is. The only difference between the prior use and the current use is the national origin of the children proposed to reside in the facility. In both situations, the children at issue are committed to the care of an agency by a referring body, and the agency contracted with Plaintiff to provide appropriate housing and care. From 2010-2017, the agency was the Department of Health and Human Services and the referring body was the Family Division of the Philadelphia Court of Common Pleas. In 2019, the agency is the Office of Refugee Resettlement , a program of

the Administration for Children and Families, an office within the United States Department of Health and Human Services.

Here, the resolution of the federal claim hinges not on the interpretation of a state or local ordinance or even on local zoning law, but whether the notice of violation was served on Plaintiff, and upheld by the Zoning Board, for an improper and discriminatory purpose. The case does not depend on the meaning of "under the jurisdiction of a court." The children housed in the facility from 2010-2017 were undeniably under the jurisdiction of the Family Court. The fact that the two uses of the property are so analogous is merely evidence of the discriminatory intent of the City in denying Plaintiff's the ability to continue to use their property.

The second question is whether the ordinance at issue is "obviously susceptible of a limiting construction" that would eliminate the constitutional issue and terminate the litigation. Chez Sez III Corp. v. Union, 945 F.2d 628, 632-33 (3d Cir. 1991). As the City admits in its Motion, "if the state courts interpret the disputed phrase in VisionQuest's favor, it would potentially have a more tenable constitutional claim." See Docket Entry 12, Mot. at p. 24. Here, even if the state court finds that the unaccompanied minor children are "under the jurisdiction of a court" the question of whether or not the exclusion of the unaccompanied minor children from this facility is discriminatory will remain.

Likewise, the third <u>Pullman</u> factor is not met.  Even if this Court determines that Plaintiff is entitled to all relief sought in its Amended Complaint, that finding would have no impact on the state court appeal regarding the interpretation of the zoning ordinance.   Plaintiff's relief lies not in the resolution of the state court appeal, but in the adjudication of the question of whether the Zoning Board's action, in affirming the notice of violation, deprived Plaintiff of its substantive due process rights and violated the FHA and gave rise to damages accrued to Plaintiff for the applicable period.  Because the resolution of the issue pending before the Pennsylvania courts will not, as a matter of course, remedy the constitutional issues raised by Plaintiff in this case, the third <u>Pullman</u> factor is not met.

Finally, even if this Court finds that all of the factors weigh in favor of abstention under <u>Pullman</u>, it should stay, and not dismiss, the case. The <u>Pullman</u> doctrine "requires retention of jurisdiction to preserve the plaintiffs' choice of a forum for the vindication of federal rights clearly infringed by the state construction ultimately adopted." <u>New Jersey-Philadelphia Presbytery of Bible Presbyterian Church</u>, 654 F.2d at 885; <u>Kessler Inst. For Rehabilitation v. Mayor of Essex Fells</u>, 876 F. Supp. 641, 657-58 (D.N.J. 1995); <u>ACS Enters. V. Comcast Cablevision, L.P.</u>, 1994 U.S. Dist. LEXIS 6256 at *24 (E.D. Pa. May 12, 1994) ("in abstaining under <u>Pullman</u>, the District Court does not abdicate its role in

determining the issues of federal law involved in the case; rather it merely postpones its adjudication of those issues …").

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Defendant's Motion to Dismiss the Amended Complaint should be denied.  Should the Court determine that any aspect of the Complaint is insufficiently plead, Plaintiff respectfully requests dismissal without prejudice and with leave to amend.

Plaintiff respectfully requests oral argument.

Dated: August 6, 2019                              Respectfully submitted,

HYLAND LEVIN SHAPIRO LLP          McCALLION & ASSOCIATES LLP

*/s/ Peter J. Boyer*                                        */s/Kenneth F. McCallion*
Peter J. Boyer, Esq. (Id. 25517)            By: Kenneth F. McCallion, Esq.
Julie M. Murphy, Esq. (Id. 206265)       100 Park Avenue – 16th floor
Daniella Gordon, Esq. (Id. 201477)        New York, New York 10017
Hyland Levin Shapiro LLP                     (646) 366-0884
6000 Sagemore Dr., Suite 6301
Marlton, NJ 08053
(856) 355-2900                                     *Admitted Pro Hac Vice*
boyer@hylandlevin.com                         *Attorneys for Plaintiff, VisionQuest*
murphy@hylandlevin.com                       *National, Ltd.*
gordon@hylandlevin.com
*Attorneys for Plaintiff, VisionQuest*
*National, Ltd.*