IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VISIONQUEST NATIONAL, LTD.,** : | |
| Plaintiff, : | |
| : | |
| v. : | Civ. No. 19-2280 |
| : | |
| **CITY OF PHILADELPHIA,** : | |
| Defendant. : | |

# O R D E R

Plaintiff VisionQuest National, Ltd. brings this § 1983 and Fair Housing Act action against the City of Philadelphia, alleging that rejecting Plaintiff's intended use of a zoning permit constituted national origin and familial status discrimination. (Am. Compl., Doc. No. 17.) The City asks me to dismiss on the merits or, alternatively, to abstain from considering the case under *Younger v. Harris*, 401 U.S. 37 (1971) and *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). (Mot. Dismiss, Doc. No. 19.) Plaintiff has responded. (Doc. No. 22.) I will grant the City's Motion on alternative grounds.

## I.   PROCEDURAL HISTORY

On May 24, 2019, Plaintiff filed a Complaint against the City and the Philadelphia Zoning Board of Adjustment, alleging that the Zoning Board's April 3, 2019 refusal to allow Plaintiff to house minor refugees under its existing permit violated § 1983. (Doc. No. 1); 42 U.S.C. § 1983. On June 13, 2019, Plaintiff sought emergency relief, asking me to enjoin Defendants from "taking any action interfering in any way with the use" of its facility as a shelter for these children. (Doc. No. 6.)  Later that same day, Plaintiff notified me that because the Philadelphia Common Pleas Court had granted injunctive relief from the same Zoning Board decision, Plaintiff would withdraw its Motion as moot. (Doc. Nos. 8, 9.)

On June 18, 2019, Plaintiff renewed its Motion for emergency relief after the City appealed

the trial court order, effectively staying the challenged injunction. (Doc. No. 10.) On June 20, 2019, Defendants responded. (Doc. No. 13.) On June 21, 2019, I denied Plaintiff's Motion, abstaining under both *Younger* and *Pullman*, and in the alternative, denying relief because Plaintiff had not demonstrated irreparable injury. (Doc. No. 14.)

On June 18, 2019, Defendants filed a Motion to Dismiss, which Plaintiff opposed. (Doc. Nos. 12., 13, 16.) On July 2, 2019, Plaintiff filed the instant First Amended Complaint, dropping the Zoning Board as a Defendant and adding a second count under the Fair Housing Act. (See generally Am. Compl.) Accordingly, I denied Defendants' Motion to Dismiss as moot and ordered the City to respond to Plaintiff's Amended Complaint. (Doc. No. 18.) On July 23, 2019, the City filed the instant Motion to Dismiss. (Doc. No. 19.) On August 6, 2019, Plaintiff responded. (Doc. No. 22.) Plaintiff's state court appeal of the Zoning Board's decision remains pending. See In re: Appeal of VisionQuest Nat'l Ltd., No. 190401351 (C.P. Phila.); see also Orabi v. Attorney Gen. of the U.S., 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.").

## II. LEGAL STANDARDS

I will conduct a two-part analysis. Fowler v. PMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, I must accept Plaintiff's factual allegations, and disregard legal conclusions or mere recitations of the elements. Id. I must then determine whether the facts alleged make out a "plausible" claim for relief. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, the burden is on the City to show that Plaintiff has failed to allege facts sufficiently detailed to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Phillips v. Cnty. of

Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

### III. FACTUAL ALLEGATIONS

As alleged, Plaintiff leases a residential facility from OYR Realty Partners, LP in Philadelphia to shelter adolescents who are not juvenile criminal offenders. (Am. Compl. ¶¶ 1, 8.) Beginning in 2010, Plaintiff operated its facility under a "Group Living" use permit. (Id. at ¶¶ 7–8.) The City initially denied OYR's permit application for the property's intended use as a group living facility. (Id. at ¶ 14.) On March 24, 2019, however, the Zoning Board granted OYR use variance relief, and the City's Department of Licenses and Inspections (L&I) issued OYR a permit for the property two days later. (Id.) Under OYR's use permit, Plaintiff could house up to 145 residents aged 13 to 18 at the existing "[b]uilding for diagnostic, treatment, education and residential facility," as long as the residents were "not under the jurisdiction of any court." (Id. at ¶¶ 8, 14; Use Permit, Ex. C to Am. Compl.)

In October 2018, Plaintiff contracted with the United States Department of Health and Human Services' Office of Refugee Resettlement to shelter sixty unaccompanied minors who had entered the United States illegally. (Am. Compl. ¶¶ 1, 16.) Plaintiff agreed to provide these minors with "physical care and maintenance (living accommodations, food, clothes, personal grooming items), medical and dental care, individualized needs assessments, educational services and services to identify relatives and/or potential legal guardians who may take physical custody of the unaccompanied child." (Id. at ¶ 16.) In anticipation of the minors' arrival, Plaintiff hired approximately seventy staff members, and plans to hire thirty more when the minors arrive. (Id. at ¶ 17.)

On January 22, 2019, L&I inspected the facility. (Id. at ¶ 33.) The next day, L&I issued a Notice of Violation, stating that OYR violated the City's Zoning Code: Plaintiff's intended use of

3

the property to house unaccompanied minors was a "new use" not covered by its existing permit. (Id. at ¶ 33; Violation Notice, Ex. K to Am. Compl.)  Plaintiff appealed the Notice to the Zoning Board, arguing that its intended "use [wa]s in compliance with [OYR's] previously issued Permit." (Appl. for Appeal, Ex. L to Am. Compl.; Am. Compl. ¶ 34.)

On March 19, 2019, the Zoning Board held a hearing on the appeal, at which a city councilperson stated that "a facility for unaccompanied minors is a use that is unfamiliar to the local community and even to the city at large," and "speculated about how the children would 'interact with the community.'"  (Id. at ¶¶ 35, 39.)  Several community members also raised concerns about the minors' possible medical needs, and the quality of service that Plaintiff might provide.  (Id. at ¶ 41.)

On April 3, 2019, the Zoning Board rejected Plaintiff's appeal.  (Id. at ¶ 42; Notice of Decision, Ex. O to Am. Compl.)  Currently, the sixty beds at Plaintiff's facility "remain empty" and its seventy staff members "remain idle."  (Id. at ¶ 43.)  Plaintiff alleges that the appeal denial was "arbitrary" and "based upon improper considerations regarding national origin and familial status of the proposed youth residents."  (Id. at ¶ 42.)  Plaintiff further alleges that the City's "construction of the use permit was arbitrary and had a disparate impact" upon the minors as "a protected classes of individuals."  (Id.)

Plaintiff charges the City with:  (1) violating § 1983 by its discriminatory decision (impermissibly based on national origin and familial status) to deny Plaintiff's intended use under OYR's existing permit; and (2) violating the Fair Housing Act by denying housing to minors because of their national original and familial status. (Id. at ¶¶ 44–65); 42 U.S.C. §§ 1983, 3604(a).

**IV.    DISCUSSION**

The City argues that Plaintiff's Amended Complaint should be dismissed because:  (1) I

4

lack subject-matter jurisdiction over Plaintiff's unripe claims; (2) I should abstain from considering Plaintiff's claims under both *Younger* and *Pullman*; (3) Plaintiff lacks prudential standing for its § 1983 claim; and (4) Plaintiff's claims lack merit. (Mem. Supp. Mot. Dismiss, Doc. No. 19); Fed. R. Civ. P. (b)(1), (6).

### A. Ripeness

The City argues that Plaintiff's claims are unripe because Plaintiff did not apply for a new permit or seek a variance. (Mem. Supp. Mot. Dismiss 7–9); Fed. R. Civ. P. 12(b)(1). I agree, and will dismiss for lack of subject-matter jurisdiction. See NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001) (lack of ripeness results in lack of subject-matter jurisdiction and necessitates dismissal of case); Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1290 (3d Cir. 1993) ("Because ripeness affects justiciability, we believe that unripe claims should ordinarily be disposed of on a motion to dismiss.").

In cases involving land-use, "challenges are not ripe unless plaintiff has given local land-planning authorities the opportunity to render a final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property." Id. (citing Williamson Planning Comm. v. Hamilton Bank, 473 U.S. 172 (1985), overruled in part by Knick v. Twp. of Scott, Pa., 139 S. Ct. 2162, 2167 (2019) ("[Plaintiff] does not question the validity of this finality requirement, which is not at issue here.")).

This "finality rule . . . prevents the premature adjudication of zoning disputes." Id. at 1291. Accordingly, a challenge to a zoning decision is premature where the zoning board could grant a variance, but the plaintiff has not applied for one. See, e.g., Knick, 139 S. Ct. at 2167 ("[T]he developer still had an opportunity to seek a variance from the appeals board, so any taking was therefore not yet final."); Williamson, 473 U.S. at 186 (upholding dismissal on ripeness grounds

5

where respondent did not seek available variance from zoning board); Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 304 (1981) (takings challenge to federal statute unripe because property owners failed to seek relief by requesting a variance or waiver); CMR D.N. Corp. v. City of Phila., 703 F.3d 612, 626 (3d Cir. 2013) ("Ripeness could not occur until the plaintiff challenging the ordinance sought and was denied a variance or a permit under the ordinance."); Taylor, 983 F.2d at 1295 ("Like a takings claim, the injury—dissimilar and irrational treatment—ripens only after the zoning hearing board takes final and definitive action through its variance or review procedures.").

Here, Plaintiff has not sought a variance or new permit from the Zoning Board for its intended use of the facility.  Rather, Plaintiff has only appealed the Zoning Board's decision that it could not house the minors under its existing permit.  Plaintiff argues that it should not be required to "undergo an entirely *new* permitting process prior to seeking redress for a wrongful, final zoning determination on an *existing* use permit."  (Pl.'s Mem. Supp. Resp. 5, Doc. No. 22-1.)  This is a distinction without a difference.  Plaintiff ignores that it could seek either another use variance (as it did to obtain its existing permit) or a new permit.

Accordingly, until Plaintiff seeks such relief as is available from the Zoning Board, Plaintiff's claims are unripe.  See Taylor, 983 F.2d at 1290 (ripeness' "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements" (quoting Abbot Labs. v. Gardner, 387 U.S. 136, 148 (1967))).  I will thus dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction.

### B. Abstention

The City argues in the alternative that I should abstain from considering Plaintiff's claims under both *Younger* and *Pullman*. (Mem. Supp. Mot. Dismiss 19–25.)  As I previously discussed,

6

abstention is warranted here under both doctrines. (See June 21, 2019 Order, Doc. No. 14.)

### *Younger Abstention*

This doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Because abstention is "the exception, not the rule," *Younger* applies only in the following "exceptional" circumstances: "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 73 (2013) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976); New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S 350, 367–368 (1989) (quotation marks omitted)).

"[T]he threshold requirement for applying *Younger* abstention" to civil enforcement proceedings is that it "must be 'quasi-criminal' in nature." ACRA Turf Club, LLC v. Zanzuccki, 748 F.3d 127, 138 (3d Cir. 2014) (citing Sprint, 571 U.S. at 72–73). I thus consider "whether (1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges." Id. (citing Sprint, 571 U.S. at 72.) I also consider "whether the State could have alternatively sought to enforce a parallel criminal statute." Id.

Here, the City (through L&I) investigated Plaintiff's use of its zoning permit and then initiated a state proceeding against Plaintiff by issuing a Notice of Violation imposing sanctions. (See Notice of Violation 2 ("Fines shall be Imposed from the date of this notice and shall be

7

assessed in the amount of $150 to $2000 per violation each and every day the violation remains uncorrected."); id. ("Your failure to correct the violations may also result in the City filing a legal action against you to obtain compliance, an injunction, and the imposition of fees and fines.").) This led Plaintiff to appeal the violation to the Zoning Board, and then appeal the Zoning Board's decision in state court.

There is thus a pending civil enforcement proceeding that is quasi-criminal in nature. See, e.g., Peters v. City of Wilkes-Barre, No. 15-152, 2016 WL 320748, at *5 (M.D. Pa. Jan. 27, 2016) (city's occupancy license enforcement action "fall[s] squarely within the civil enforcement action category eligible for *Younger* abstention"); L.P. Grp. 2, Inc. v. City of Phila., No. 13-7484, 2015 WL 3822203, at *5 (E.D. Pa. June 19, 2015) (civil enforcement action quasi-criminal in nature where "the City initiated the state proceedings to enforce violations of Philadelphia's prevailing wage laws"); Schoenstein v. Constable, No. 13-6803, 2014 WL 6685409, at *2–4, 7 (D.N.J. Nov. 26, 2014) (city's investigation that plaintiff was illegally operating an unlicensed boarding house, resulting in multiple violation notices and imposition of sanctions, and an appeal was quasi-criminal in nature).

*Younger* abstention may thus be warranted if:

> (1) there is a pending state proceeding that is judicial in nature, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceeding for the plaintiff to raise its constitutional challenges.

Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo, 339 F. App'x 232, 236 (3d Cir. 2009).

As I previously discussed, all three requirements are met here. (June 21, 2019 Order 2–3.) It is undisputed that there is a pending state judicial proceeding. (Pl.'s Resp. 24); see In re: Appeal of VisionQuest Nat'l Ltd., No. 190401351.

Plaintiff argues that it has not challenged the City's zoning ordinance, but the "discriminatory, arbitrary and capricious manner in which the ordinance has been applied." (Pl.'s Resp. 24.)  Yet, Plaintiff's case turns upon whether the restriction placed on its existing permit—that it cannot house residents "under the jurisdiction of any court"—applies to its intended use. (Am. Compl. ¶¶ 8–18.)  In these circumstances, I could not grant the relief Plaintiff seeks (an injunction against the City) without "sit[ting] as a zoning board of appeals." Belle Terre v. Boraas, 416 U.S. 1, 13 (1974); see Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 410 (3d Cir. 2005) ("[E]ven though many of [plaintiff's] claims do not directly involve important state interests, abstention may still be appropriate if a federal injunction preventing the Township from acting in a discriminatory manner would have the effect of enjoining state proceedings that do involve important state interests."); Gwynedd Props., Inc. v. Lower Gwynedd Twp., 970 F.2d 1195, 1204 (3d Cir. 1992) ("[A]bstention is appropriate to the extent an injunction enjoining the appellees from denying approvals and permits would result in a *de facto* review of the township's zoning decisions currently under review in the state courts.").  Accordingly, the implication of important state interests concerning zoning and land use militates strongly in favor of *Younger* abstention.  See Addiction Specialists, 411 F.3d at 410 ("[I]t may often be appropriate to invoke abstention to avoid deciding land use cases in federal court, particularly where a state court has already undertaken a review of the local zoning decision at issue."); United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 402 (3d Cir. 2003) ("Land-use decisions are matters of local concern.").

Finally, Plaintiff argues that the Zoning Board did not have jurisdiction to address Plaintiff's constitutional rights, but ignores that it could easily raise its constitutional arguments before the Pennsylvania state courts. (Pl.'s Resp. 25); see, e.g., Rittenhouse Row v. Aspite, 917

9

A.2d 880, 883 (Pa. Commw. Ct. 2006) (considering substantive due process challenge to Philadelphia zoning ordinance).

All three factors are thus met. In these circumstances, I will abstain under *Younger* from considering Plaintiff's claims.

### *Pullman* Abstention

*Pullman* abstention is "justified under principles of comity" where "a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question." Chez Sez III Corp. v. Twp. of Union, 945 F.2d 628, 631 (3d Cir. 1991). Accordingly, I should abstain where there are:

> (1) Uncertain issues of state law underlying the federal constitutional claims brought in federal court; (2) State law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; [and] (3) A federal court's erroneous construction of state law would be disruptive of important state policies.

Id. Where all three circumstances exist, *Pullman* abstention "is generally proper" "absent significant reasons to the contrary." D'Iorio v. Delaware Cty., 592 F.2d 681, 961–92 (3d Cir. 1978).

As I have already discussed, all three circumstances are present. (June 21, 2019 Order 3–4.) The gravamen of Plaintiff's state court appeal is its challenge to the reasonableness of the Zoning Board's interpretation of the "under the jurisdiction of a court" language in Plaintiff's zoning permit. (Pl.'s Resp. 28; see Am. Compl. ¶¶ 8–14.) If this state law question were decided in Plaintiff's favor, it would eliminate Plaintiff's federal claims. See Baggett v. Bullitt, 377 U.S. 360, 377 (1964) ("In the bulk of abstention cases in this Court, . . . the unsettled issue of state law principally concerned the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular manner would eliminate the constitutional issue

10

and terminate the litigation." (footnotes omitted)). The first two *Pullman* factors are thus satisfied.

Plaintiff argues that if I grant relief, it would have no impact on the state proceedings. (Pl.'s Resp. 29.) I cannot grant Plaintiff relief, however, without determining whether the City's interpretation of the zoning code was arbitrary (i.e., motivated by discriminatory animus rather than reason). Accordingly, I cannot decide Plaintiff's claims without potentially impugning (and so disrupting) important City zoning and land-use policies. See Chez Sez III Corp., 945 F.2d at 633 ("Land use issues are an area of particularly local concern which involve questions of both state and municipal law.").

As all three circumstances exist, and I find no significant reason to reject *Pullman* abstention, I will, in the alternative, abstain from considering Plaintiff's claims.

Finally, Plaintiff argues that I should stay, rather than dismiss its case should I find abstention appropriate. (Pl.'s Resp. 29.) Because I am abstaining in the alternative, however, I will not stay my decision.

### C. The City's Remaining Arguments

The City persuasively argues that Plaintiff's claims are implausible. (See Mem. Supp. Mot. Dismiss, 10–18.) In light of my decision, I will not address this contention. To the extent, however, that the City argues that Plaintiff lacks prudential standing to bring its § 1983 claims, the City is incorrect. Plaintiff alleges that the City denied its intended use of a permit because of discriminatory motives, impermissibly infringing on its property rights. (Am. Compl. ¶¶ 44–51); see Addiction Specialists, 411 F.3d at 407–08. Accordingly, Plaintiff has standing to assert its claims. See also Havens Realty Corp. v. Coleman, 455 U.S. 363, 372 (1982) (courts "lack the authority to create prudential barriers to standing" in FHA suits).

11

## V. CONCLUSION

In sum, I will dismiss Plaintiff's claims as unripe and, in the alternative, abstain under *Younger* and *Pullman* doctrines. In these circumstances, I will dismiss Plaintiff's Amended Complaint without prejudice. An appropriate Judgment follows.

August 20, 2019 **AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.